

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

December 30, 2025

**BY ECF**

The Honorable Katherine Polk Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. Vincent St. Louis*, 25 Cr. 401 (KPF)

Dear Judge Failla:

    The Government respectfully writes in opposition to defendant Vincent St. Louis's December 22, 2025 letter in which the defendant requests that the Court modify his bail conditions by removing his curfew, which is enforced by location monitoring. (Dkt. 25.) The Court should not remove these minimal restrictions on the defendant's supervision given that the defendant has now been convicted of a serious offense—the unlawful transportation of firearms—and because the defendant may still be able to access firearms that he has not yet turned over to the Government. Accordingly, the Government opposes the defendant's request.

## I.    Offense Conduct

    The defendant has been convicted, upon a plea of guilty, of interstate transportation of firearms, in violation of 18 U.S.C. § 922(a)(3). The defendant has purchased approximately 33 firearms in Pennsylvania between 2017 and 2025. In making these purchases, the defendant listed several different Pennsylvania addresses as his residence, including an address for a UPS store and a PO Box. (Dkt. 1 ¶ 4.) ATF agents interviewed the defendant at his residence in the Bronx in February 2024 and inquired about his gun purchases. (*Id.* ¶¶ 4, 9.) After this interview, the defendant rented a room in a house in Pennsylvania, which he thereafter listed as his residence when purchasing firearms. (*See id.* ¶ 4.) At all times since at least 2017, the defendant has lived in the Bronx, New York. (*Id.*)

    Approximately five of the 33 firearms purchased by the defendant have been recovered in various states and countries. (*Id.* at 2 n.1.) At least two firearms purchased by the defendant have been recovered in New York. One, which had a serial number that was obliterated but later restored, was found in the apartment of the defendant's former significant other after she had been evicted. (*Id.* ¶ 9(b).)[1] The defendant attempted to enter that apartment to retrieve his possessions but was unsuccessful. (*Id.*) Law enforcement later recovered another firearm from the defendant's

---

[1] Law enforcement recovered a second firearm from this location that also had an obliterated serial number, but law enforcement was unable to restore that serial number.

safe in his apartment in the Bronx. (*Id.* ¶¶ 11-15.) One firearm that the defendant had purchased was recovered in Grenada by Grenadian Police's Narcotics Unit in April 2024, and another firearm that was likely purchased by the defendant—but that had an obliterated serial number that could not be fully restored—was found on the defendant's person in January 2023, also in Grenada. (*Id.* at 2 n.1.) Another firearm purchased by the defendant was recovered outside of an elementary school in Maryland in 2024. (*Id.*) This gun also had an obliterated serial number, which law enforcement was able to restore and use to link the gun to the defendant. (*Id.*)

## II.    Procedural History and Pretrial Supervision history

The defendant was arrested on April 16, 2025, following a search of his premises pursuant to a judicially authorized warrant during which agents found, among other things, one of the firearms that the defendant had purchased in Pennsylvania. The following day, the defendant was charged by complaint with interstate transportation of firearms and presented before Magistrate Judge Gabriel W. Gorenstein. (Dkt. 1.) Following a bail hearing, which included a significant discussion of the difficulties that detention would have on the defendant's ability to work as an electrician, Judge Gorenstein ordered the defendant released to home detention. (Dkt. 4.) Judge Gorenstein imposed, among other things, a $50,000 bond co-signed by two financially responsible people, and ordered the defendant's travel be restricted to the five boroughs, with temporary additional travel permitted upon the consent of the Government and Pretrial Services. (*Id.*)

On May 30, 2025, the defendant asked the Court to reduce the terms of release from home detention to a curfew because Pretrial Services was having difficulty monitoring him in light of the itinerant nature of his job, and Magistrate Judge Robyn F. Tarnofsky granted this request the same day. (Dkt. 8.) Then, on or about July 29, 2025, Magistrate Judge Stewart D. Aaron held a bail hearing at the request of Pretrial Services after the defendant repeatedly failed to abide by the terms of his curfew. (*See* Dkt. 13.) The Government and Pretrial Services asked that the defendant's conditions remain the same, and Judge Aaron ordered that bail be continued subject to the same conditions. However, Judge Aaron warned, in substance, that if there were any further compliance issues the matter should be returned to him, and he would detain the defendant.

On September 5, 2025, the defendant waived indictment and proceeded via an information (the "Information"), also charging him with unlawful interstate transportation of firearms. (Dkt. 17.) On December 12, 2025, the defendant pleaded guilty to the single count Information, and the Court continued the defendant on bail. Sentencing is scheduled for April 7, 2025.

## III.    Applicable Law

Because the defendant has been convicted of the charged offense, the law governing his release requires that the defendant be detained unless certain requirements are met, among them, that the Court find by clear and convincing evidence that the defendant is not likely to flee or pose a danger to any other person or the community. 18 U.S.C. § 3143(a)(1). Section 3143(a)(1) "establishes a presumption in favor of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004). The burden on the defendant is "plainly substantial," as "a guilty verdict greatly reduces a defendant's expectation in continued liberty." *Id.*

### IV.    The Defendant's Curfew and Location Monitoring Condition Is Warranted

The defendant's motion to remove the curfew and location monitoring conditions should be denied.  These conditions are modest, commonsense restrictions on the defendant's liberty designed to ensure his continued appearance in this matter and to protect the community.

The defendant has not shown by clear and convincing evidence that he is not likely to flee or pose a danger to the community if these conditions are removed.  As to risk of flight, the defendant has been convicted, meaning that the prospect of a sentence is no longer hypothetical, but is, instead, certain, and the defendant here faces up to five years' imprisonment.  More fundamentally, the defendant presents a danger to society because of his access to firearms and ability to disseminate those firearms to others—a risk that will increase if he is no longer subjected to a curfew and location monitoring.  As noted above, the defendant has purchased approximately 33 firearms since 2017, and approximately five of those firearms have been found in different states and countries.  The serial numbers on most of the recovered firearms were obliterated, making it difficult for law enforcement to trace them.  *See generally United States v. St. Hilaire*, 960 F.3d 61 (2d Cir. 2020).  And, although the defendant told ATF agents during an interview in February 2024 that he still had approximately 8 to 15 guns, recently, through counsel, he informed the Government that he only has two guns in his apartment in Pennsylvania.  This means that approximately 25 guns are currently unaccounted for, which is particularly concerning given that nearly all of the guns recovered thus far have had obliterated serial numbers.[2]

The defendant's bases for seeking to reduce the conditions of his release do not overcome these reasons.  The defendant first cites to his recent compliance with the conditions of his release.  Putting aside the fact that the defendant initially had significant difficulty complying with the terms of his release—such that Judge Aaron informed the defendant that if he had any further violations, he would personally order the defendant detained—compliance alone is insufficient to support the requested modification of his conditions.  While the defendant also complains that the ankle monitor is causing him discomfort, the Government respectfully submits that the defendant has not shown that he is unlikely to flee or does not pose a danger on the facts here.

Nonetheless, defense counsel and the Government have been discussing a solution that mitigates the risk of danger by the defendant surrendering any of the remaining guns he has in his possession for safe keeping.  Initially, ATF agents believed that they could take custody of the defendant's guns for safekeeping.  However, during subsequent discussions between ATF legal counsel, ATF agents, and the Government, ATF has clarified that it believes it can only take possession of the guns if the defendant agrees to abandon those guns so that ATF can

---

[2] The defendant told agents in February 2024 that he resold some, but not all, of these firearms to a federal firearms licensee ("FFL").  The defendant has never informed the Government how many firearms he resold, when, or to whom.

administratively forfeit them in the long term.[3]  The Government offered this option to the defendant, but he declined.  The parties discussed other options but have not been able to reach a solution on a path forward that is acceptable to both parties.  Specifically, while the Government does not believe that the defendant giving a third party possession of the guns mitigates the risk of danger here, as the defendant could easily retake possession of those guns, the Government has informed defense counsel that if the defendant surrenders his guns to *local* law enforcement or otherwise properly disposes of the guns, it is willing to reconsider its position.[4]

The Government, therefore, respectfully submits that the Court should deny the defendant's request.

Respectfully submitted,

JAY CLAYTON
United States Attorney
Southern District of New York

By: _____
Lauren E. Phillips
Assistant United States Attorney
(212) 637-2231

cc: Mark B. Gombiner, Esq. (by ECF)

---

[3] ATF believes that the guns are subject to administrative forfeiture because the defendant illegally used a false address to purchase these guns.

[4] Contrary to the defendant's letter, the Government has not "rejected" the proposal that the defendant "sell his guns back to the gun stores."  (Dkt. 25 at 2.)  It has only rejected the defendant's proposal that ATF take custody of the guns now and *then* the defendant sell them back to an FFL because, as explained above, ATF's position is that they cannot take possession of the guns for safekeeping.

2024.05.14